Criminal Case Template






COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



MANUEL RUBEN GARCIA,

                            Appellant,

v.

THE STATE OF TEXAS,

                            Appellee.

§

§

§

§

§

No. 08-05-00111-CR

Appeal from the

143rd District Court

of Ward County, Texas

(TC# 04-10-04668-CRW)



 
O P I N I O N

           This is an appeal from a jury conviction for the offense of aggravated sexual assault. 
The jury assessed punishment at ninety-five years’ imprisonment in the Institutional Division
of the Texas Department of Criminal Justice and a fine of $5,000. We affirm the judgment
of the trial court.
I. SUMMARY OF THE EVIDENCE
           The seventy-eight-year-old complainant testified that in the evening on September 16,
2004, Appellant forcibly entered her home and forcibly sexually assaulted her by penetrating
her with his hand and, on two different occasions, with his penis. She recognized Appellant
because she had seen him several months before. Appellant spoke to her in English. 
Appellant stated to her that he was assaulting her because “nobody loved him” and his wife
had left him and nobody cared about him. The State then introduced Appellant’s divorce
decree into evidence. Appellant kissed the complainant on the hip during the incident. She
related that fact to police investigators and they took a swab from that area of her hip. The
witness testified that the assault occurred from forty-five minutes to an hour. Prior to
leaving, Appellant asked for money and the complainant gave him thirteen dollars. The
complainant testified that she identified Appellant from a photo line-up provided by the
police.
           Robert Flores testified that he and Appellant were at the complainant’s house to assist
her in getting into her house as she had locked the keys inside. He stated that Appellant
spoke English.
           Daniel Leyva, a deputy with the Ward County Sheriff’s Office, testified that on
September 16, 2004 at approximately 8:40 p.m., he observed Appellant walking at a location
about three blocks from where the assault occurred.
           Deputy Ben Deishler stated that the complainant identified Appellant from a
photographic line-up. He related that he had spoken to Appellant and he was able to speak
English.
           Elsa Alaniz testified that she saw Appellant go by her home at 10 p.m. on September
16, 2004. He was walking toward his home and he stopped to talk to her and her son. He
was wearing blue jeans and boots but no shirt. He stated he had been out jogging. This
location was several blocks from where the assault occurred. The next evening, she saw
Appellant and her boyfriend kiddingly accused Appellant of committing the crime the night
before and after the third of such proddings, Appellant stated that he did commit the crime. 
           Ruben Navarrete testified that he was a friend of Appellant. On September 17, 2004,
Appellant came to his house and stated that he committed the offense in response to kidding
from Navarrete.
           Vanessa Nelson testified that she was currently a DNA analyst with the Harris County
Medical Examiner’s Office and was a former DNA section supervisor for the Texas
Department of Public Safety Crime Lab in El Paso, Texas. She stated that material from a
swab taken from the complainant’s hip revealed a DNA profile consistent with a mixture
from Appellant and the complainant. She testified that Appellant could not be excluded as
a contributor to that item and the probability of selecting an unrelated person at random who
could have so contributed is approximately one in 1,226 for Hispanics.
           Joe Carrasco stated that he was a friend of Appellant. On September 16, 2004, he and
Appellant had unloaded a trailer of shingles and they and another individual proceeded to
drink a 12 pack and then a 20 pack of beer. Carrasco and Appellant went to buy cigarettes
and as they drove by a Sonic Drive-In, they saw Appellant’s ex-wife. When Carrasco refused
to stop, Appellant cursed at him.
           Appellant testified in his own behalf. He denied committing the offense and he stated
that he had been at his house during the time that it occurred. He stated that his admission
to Ruben Navarrete was merely part of a playful, kidding exchange.
           Paul Goldstein, a professor of genetics and toxicology at the University of Texas at
El Paso, testified for the defense. He stated that if a DNA sample does not contain a match
in each location of the profile, the person is excluded. As the specimens matched Appellant
in certain locations, but not in others, he was excluded as a match.
II. DISCUSSION
           In Issue No. One, Appellant contends that the evidence is legally insufficient to
support the conviction. In reviewing the legal sufficiency of the evidence, we are constrained
to view the evidence in the light most favorable to the judgment to determine whether any
rational trier of fact could find the essential elements of the offense, as alleged in the
application paragraph of the charge to the jury, beyond a reasonable doubt. Jackson v.
Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Butler v. State, 769 S.W.2d
234, 239 (Tex. Crim. App. 1989); Humason v. State, 728 S.W.2d 363, 366 (Tex. Crim. App.
1987). More particularly, sufficiency of the evidence should be measured by the elements
of the offense as defined by the hypothetically correct jury charge for the case. Malik v.
State, 953 S.W.2d 234, 239-40 (Tex. Crim. App. 1997).
           Our role is not to ascertain whether the evidence establishes guilt beyond a reasonable
doubt. Stoker v. State, 788 S.W.2d 1, 6 (Tex. Crim. App. 1989), cert. denied, 498 U.S. 951,
111 S.Ct. 371, 112 L.Ed.2d 333 (1990); Dwyer v. State, 836 S.W.2d 700, 702 (Tex. App.--El
Paso 1992, pet. ref’d). We do not resolve any conflict in fact, weigh any evidence or
evaluate the credibility of any witnesses, and thus, the fact-finding results of a criminal jury
trial are given great deference. Menchaca v. State, 901 S.W.2d 640, 650-52 (Tex. App.--El
Paso 1995, pet. ref’d); Adelman v. State, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992);
Matson v. State, 819 S.W.2d 839, 843 (Tex. Crim. App. 1991); Leyva v. State, 840 S.W.2d
757, 759 (Tex. App.--El Paso 1992, pet. ref’d); Bennett v. State, 831 S.W.2d 20, 22 (Tex.
App.--El Paso 1992, no pet.). Instead, our only duty is to determine if both the explicit and
implicit findings of the trier of fact are rational by viewing all the evidence admitted at trial
in the light most favorable to the verdict. Adelman, 828 S.W.2d at 421-22. In so doing, we
resolve any inconsistencies in the evidence in favor of the verdict. Matson, 819 S.W.2d at
843 (quoting Moreno v. State, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988)). The trier of
fact, not the appellate court, is free to accept or reject all or any portion of any witness’s
testimony. Belton v. State, 900 S.W.2d 886, 897 (Tex. App.--El Paso 1995, pet. ref’d).
           In the present case, the complainant was familiar with her assailant and she had
adequate time to observe him during the assault. Appellant was placed in the area at the time
of the assault and there is supporting scientific evidence placing Appellant at the scene. We
find that the evidence is legally sufficient to support the conviction. Issue No. One is
overruled.
           In Issue No. Two, Appellant maintains the evidence is factually insufficient to support
the conviction. In conducting a factual sufficiency review, we view the evidence in a neutral
light to determine whether a jury was rationally justified in finding guilt beyond a reasonable
doubt. We set aside the fact finder’s verdict only if (1) the evidence supporting the verdict,
when considered by itself, is too weak to support the finding of guilt beyond a reasonable
doubt; or (2) evidence contrary to the verdict is strong enough that the
beyond-a-reasonable-doubt standard could not have been met. Zuniga v. State, 144 S.W.3d
477, 484-85 (Tex. Crim. App. 2004). However, our factual sufficiency review must be
appropriately deferential so as to avoid substituting our judgment for that of the fact finder. 
Clewis v. State, 922 S.W.2d 126, 133 (Tex. Crim. App. 1996). Accordingly, we are
authorized to set aside the jury’s finding of fact only in instances where it is manifestly
unjust, shocks the conscience, or clearly demonstrates bias. Id. at 135. If the evidence is
factually insufficient, we remand to the trial court for a new trial. Id. at 133-35.
           The evidence presented by Appellant differed from that presented from the State. 
However, it was the function of the fact finder to believe or disbelieve the testimony
involved. While Appellant’s version of events differed from the complainant and the
scientific evidence differed, these matters were resolved by the fact finder and these
differences were not of the nature that we will find the evidence to be factually insufficient. 
Issue No. Two is overruled.
           In Issue No. Three, Appellant argues that the court erred by not conducting a hearing
to determine the admissibility of the scientific evidence presented by the State. At trial,
Appellant objected to the testimony of the State’s expert witness by stating that the witness
could not testify to a reasonable degree of certainty that any DNA located in the exhibit was
consistent with that of Appellant. We note that this objection does not comport with the
contention on appeal that the witness is entirely unable to scientifically determine if the
Appellant’s DNA was a part of the mixture obtained from the swab taken from the
complainant’s hip. The objection at trial must comport with the error complained of on
appeal. Turner v. State, 805 S.W.2d 423, 431 (Tex. Crim. App.), cert. denied, 502 U.S. 870,
112 S.Ct. 202, 116 L.Ed.2d 162 (1991). Accordingly, Appellant has failed to preserve this
issue for appellate review. Issue No. Three is overruled.
           In Issue No. Four, Appellant contends that Appellant did not receive effective
assistance of counsel at trial. Successful claims of ineffective assistance of counsel must first
demonstrate that counsel was not functioning as counsel guaranteed by the Sixth Amendment
in providing reasonably effective assistance. Strickland v. Washington, 466 U.S. 668, 687,
104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). The second prong of this test requires a
showing that counsel’s errors were so serious as to deprive Appellant of a fair trial, such that
there arises a reasonable probability that but for counsel’s unprofessional errors, the results
would have been different. Reasonable probability is a likelihood sufficient to undermine
confidence in the outcome. Strickland, 466 U.S. at 694, 104 S.Ct. at 2068. Texas adopted
this test in Wilkerson v. State, 726 S.W.2d 542, 548 (Tex. Crim. App. 1986). See also
McFarland v. State, 845 S.W.2d 824, 842 (Tex. Crim. App. 1992), cert. denied, 508 U.S.
963, 113 S.Ct. 2937, 124 L.Ed.2d 686 (1993). The constitutional right to counsel does not
mean errorless representation. In order to meet the constitutional standard, counsel must
provide reasonably effective assistance. Wilkerson, 726 S.W.2d at 548. In reviewing these
assertions, the totality of representation is examined as opposed to focusing upon isolated
acts or omissions. Ineffective assistance of counsel cannot be established by isolating or
separating out one portion of the trial counsel’s performance for examination. Bridge v.
State, 726 S.W.2d 558, 571 (Tex. Crim. App. 1986). In that regard, this Court, on review,
will not engage in hindsighted comparisons of how other counsel, in particular appellate
counsel, might have tried the case. See Wilkerson, 726 S.W.2d at 548. A fair assessment of
trial counsel’s performance requires that every effort be made to eliminate the distorting
effects of hindsight, to reconstruct the circumstances at trial, and to evaluate the conduct
from counsel’s perspective at the time. Stafford v. State, 813 S.W.2d 503, 506 (Tex. Crim.
App. 1991). We must indulge a strong presumption that counsel’s conduct falls within the
wide range of reasonably professional assistance. The Appellant must overcome the
presumption that under the circumstances at trial, the challenged action could be considered
sound trial strategy. Strickland, 466 U.S. at 688-89, 104 S.Ct. at 2065; Stafford, 813 S.W.2d
at 506. Consequently, allegations of ineffectiveness of counsel must be firmly founded by
the record. Hawkins v. State, 660 S.W.2d 65, 75 (Tex. Crim. App. 1983); Mercado v. State,
615 S.W.2d 225, 228 (Tex. Crim. App. 1981). The burden is upon Appellant to establish
ineffective assistance of counsel by a preponderance of the evidence. Williams v. State, 837
S.W.2d 759, 761 (Tex. App.--El Paso 1992, no pet.).
           Initially, we note that Appellant did not file a timely motion for new trial. In most
instances, the record on direct appeal is undeveloped and cannot adequately reflect the
failings of trial counsel. Thompson v. State, 9 S.W.3d 808, 813-14 (Tex. Crim. App. 1999).
A defendant may rebut the presumption of effectiveness by providing a record from which
the appellate court may ascertain that trial counsel’s performance was not based on sound
trial strategy. Parmer v. State, 38 S.W.3d 661, 666 (Tex. App.--Austin 2000, pet. ref’d). A
defendant may provide that record by filing a motion for new trial and obtaining a hearing
thereon based on ineffective assistance of counsel. Id. Any error in trial strategy will be
deemed inadequate representation only if counsel’s actions are without any plausible basis. 
Id. A record that does not include any discernible explanation of the motivation behind trial
counsel’s actions fails to establish whether his or her actions were of strategic design or were
the result of negligent conduct. Thompson, 9 S.W.3d at 814. On this record, Appellant has
not rebutted the strong presumption of trial strategy. Accordingly, we overrule Appellant’s
Issue No. Four.
           Having overruled each of Appellant’s issues on review, we affirm the judgment of the
trial court.
 
                                                                  RICHARD BARAJAS, Chief Justice

February 16, 2006

Before Barajas, C.J., McClure, and Chew, JJ.

(Do Not Publish)